```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

DAWN ZINN and WILLIAM ZINN,           )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    ) No. CIV-09-425-FHS
                                      )
VALLEY VIEW HOSPITAL, an Oklahoma Not )
For Profit Corporation, d/b/a VALLEY  )
VIEW REGIONAL HOSPITAL; VALLEY VIEW   )
HOSPITAL, an Oklahoma Not For Profit  )
Corporation, d/b/a VALLEY VIEW        )
REGIONAL HOSPITAL EMERGENCY MEDICAL   )
SERVICES; MICHAEL R. STAFFORD, D.O.;  )
LAUREL M. JORDAN, D.O.; JOHN C.       )
SIEGLE, M.D.; and SOUTHEASTERN        )
WOMEN'S HEALTH CENTER, a Professional )
Limited Liability Company,            )
                                      )
        Defendants.                   )

## OPINION AND ORDER

Plaintiffs, Dawn and William Zinn, bring this action against Defendant, Valley View Hospital, an Oklahoma Not for Profit Corporation, d/b/a Valley View Regional Hospital and Valley View Hospital, an Oklahoma Not for Profit Corporation, d/b/a Valley View Regional Hospital Emergency Medical Services (collectively "Valley View") for alleged violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"). Plaintiffs also assert medical negligence/wrongful death claims against Valley View and Defendants, Michael R. Stafford, D.O., Laurel M. Jordan, D.O., John C. Siegle, M.D., and Southeastern Women's Health Center, a Professional Limited Liability Company, under Oklahoma law pursuant to this Court's supplemental jurisdiction. Plaintiffs seek to recover damages related to the death of their baby boy, who was delivered and pronounced dead following a cesarean section delivery

performed on Plaintiff Dawn Zinn at Valley View on February 15, 2008.

Before the Court for its consideration are Defendants' Motions to Dismiss (Docket Nos. 28, 29, 37, and 42). Plaintiffs have filed their responses (Docket Nos. 39, 40, 41, and 45) and Defendants have filed their replies (Docket Nos. 43, 44, and 47). In their respective motions, Defendants argue that EMTALA is inapplicable to the facts as alleged by Plaintiffs in the Complaint and that the Court should decline to exercise supplemental jurisdiction over the remaining state law medical negligence/wrongful death claims.[1] For the reasons set forth below, the Court agrees with Defendants and orders this case dismissed in its entirety.

**Factual Background**

According to Plaintiffs' Complaint, Dawn Zinn was transported to Valley View Regional Hospital on February 15, 2008, after being involved in a motor vehicle accident. During the transport to the hospital, advanced life support services were rendered to Dawn Zinn and the fetal heart tones of Dawn Zinn's unborn child were measured at 150 to 160 beats per minute.[2] Dawn Zinn arrived in the emergency room of Valley View Hospital at 8:10 a.m. on February 15,

---

[1] Although all Defendants argue that EMTALA is inapplicable, Plaintiffs' EMTALA claims are properly brought against only Valley View. Plaintiffs' limitation of their EMTALA claims to Valley View is appropriate as EMTALA suits can be brought only against participating hospitals, not physicians or other healthcare personnel or medical corporations. Delaney v. Cade, 986 F.2d 387, 393-94 (10th Cir. 1993).

[2] The Complaint is silent about the stage of pregnancy; however, Plaintiffs state in their response briefs that Dawn Zinn was eight months pregnant.

2008, and the fetal heart tones were measured at 136-141 beats per minute.  At 8:15 a.m., a nurse contacted the Labor and Delivery Unit concerning a fetal monitor.  At 8:31 a.m., the fetal heart tones were measured at 166 beats per minute.  No fetal monitor was applied to Dawn Zinn during her stay in the emergency room on February 15, 2008.

At 10:40 a.m. on February 15, 2008, Dawn Zinn was moved around in bed and a large amount of blood and fluid was discovered coming from her vaginal area.  At 10:40 a.m., Defendant Laurel M. Jordan, D.O., an obstetrical physician, was notified of Dawn Zinn's condition.  At 11:06 a.m., an ultrasound machine was brought to the emergency room and Dawn Zinn was moved to the obstetrical department at 11:08 a.m.  At 11:19 a.m., an emergency cesarean section delivery was performed on Dawn Zinn.  At 11:36 a.m., Plaintiff's baby boy was delivered and pronounced dead.

Plaintiffs' EMTALA claim is brought under 42 U.S.C. § 1395dd.  Plaintiffs contend Valley View violated 42 U.S.C. § 1395dd(a) by failing to provide "an appropriate medical screening" of Dawn Zinn and her unborn child to determine if an emergency medical condition existed.  Plaintiffs also contend Valley View violated 42 U.S.C. § 13955dd(b) and (c) by failing to stabilize Dawn Zinn's medical condition and by failing to transfer her to another healthcare facility.

**Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint will be dismissed for "failure to state a claim upon which relief can be granted."  When considering a motion to dismiss under Rule 12(b)(6), a reviewing court "must accept all the well-

pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991). The Supreme Court has recently announced that the inquiry to be used when considering a dismissal under Rule 12(b)(6) is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy this standard, Plaintiffs must "nudge[] [their] claims across the line from conceivable to plausible." Id. While detailed factual allegations are not necessary, the assertion of "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. Thus, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis in original).

**EMTALA CLAIM**

Congress enacted EMTALA in 1986 to address the problem of hospitals "dumping," or refusing to treat, emergency room patients who did not have adequate medical insurance or who could not otherwise pay for medical services. Ingram v. Muskogee Regional Medical Center, 235 F.3d 550, 551 (10th Cir. 2000). Violations of EMTALA can be redressed under 42 U.S.C. § 1395dd(d)(2)(A), which grants a private right of action to "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section."[3] EMTALA is not, however, a federal malpractice statute. Id. at 552; Rivera v.

---

[3] No argument is made that Valley View is not a participating hospital within the meaning of EMTALA.

Hospital Episcopal Cristo Redentor, et al., 613 F.Supp. 192, 197 (D. Puerto Rico 2009). EMTALA is complementary to state tort remedies for malpractice in the sense that it "create[s] a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available." Reynolds v. Maine General Health, 218 F.3d 78, 83 (1st Cir. 2000).

Of particular relevance to the claims asserted by Plaintiffs, EMTALA imposes three primary obligations on participating hospitals: 1) the hospital must provide an appropriate medical screening to emergency room patients to determine whether or not an emergency medical condition exists; 2) if an emergency medical condition exists, the hospital must render the services necessary to stabilize the patient's medical condition; and 3) if the patient has an emergency medical condition which has not been stabilized, the hospital may not transfer the patient out of the hospital, unless certain conditions are met. 42 U.S.C. § 1395dd(a),(b) and (c). Plaintiffs contend Valley View violated subsection 1395dd(a) by failing to provide Dawn Zinn an appropriate medical screening when she presented to the emergency room on February 15, 2008. The medical screening requirement of subsection (a) provides:

> [I]f any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists.

In Repp v. Anadarko Municipal Hospital, 43 F.3d 519 (10th Cir. 1994), the Tenth Circuit interpreted the phrase "appropriate medical screening" in the context of an EMTALA claim under section

1395dd(a). The Tenth Circuit rejected an interpretation that would impose a uniform or national standard to medical screening of emergency room patients. Id. at 522. Rather, subsection 1395dd(a)'s requirement is "hospital-specific, varying with the specific circumstances of each provider." Id. The Tenth Circuit concluded:

> We believe that a hospital defines which procedures are within its capabilities when it establishes a standard screening policy for patients entering the emergency room. Indeed, hospitals, and not reviewing courts, are in the best position to assess their own capabilities. Thus, a hospital violates section 1395dd(a) when it does not follow its own standard procedures.

Id. This "disparate treatment" standard imposes an obligation on a participating hospital under EMTALA to assure that they "treat[] every patient perceived to have the same medical condition in the same manner." Phillips v. Hillcrest Medical Center, 244 F.3d 790, 797 (10th Cir. 2001). Consequently, when evaluating an EMTALA claim under subsection 1395dd(a), the relevant inquiry is not whether the emergency room procedures were adequate, but "only whether the hospital adhered to its own procedures." Repp, 43 F.3d at 522 n. 4. By narrowly interpreting the phrase "appropriate medical screening," the Tenth Circuit has "tie[d] the statute to its limited purpose, which was to eliminate patient dumping and not to federalize medical malpractice." Ingram, 235 F.3d at 552.

In their Complaint, Plaintiffs allege Valley View violated subsection 1395dd(a) by "failing to provide an appropriate medical screening exam to Plaintiff Dawn Zinn and her unborn child to determine whether an emergency medical condition existed." Complaint at ¶ 32. Plaintiffs' Complaint, however, contains no allegations concerning Valley View's emergency room screening

6

procedures or a recitation of how Valley View supposedly violated those procedures with respect to their treatment and evaluation of Dawn Zinn. Absent such allegations, the Complaint does not arise above the speculative level with respect to Plaintiffs' subsection 1395dd(a) claim and such claim is subject to dismissal under the Twombly standard for review of a Rule 12(b)(6) motion to dismiss.

What Plaintiffs do allege in their Complaint is that fetal heart tones were measured twice within the first sixteen minutes of Dawn Zinn's arrival in the emergency room. A request was made for a fetal monitor within five minutes of her arrival; unfortunately, the fetal monitor was never applied to Dawn Zinn in the emergency room. After Dawn Zinn was moved to a bed, blood and fluid were found coming from her vaginal area approximately two and one-half hours after being admitted to the emergency room. An ultrasound machine was brought to the emergency room and Dawn Zinn was thereafter moved to the obstetrical department where an emergency cesarean section was performed - all within forty minutes of finding Dawn Zinn in distress in the emergency room bed. These allegations are wholly devoid of any statement or recitation as to how Valley View departed from its standard emergency procedures. Absent such an allegation, Plaintiffs' EMTALA claim must fail. See Repp, 43 F.3d at 522 n. 4 ("A court should ask only whether the hospital adhered to its own procedures, not whether the procedures were adequate if followed.").

The inference to be drawn from Plaintiffs' Complaint and responses to the Motions to Dismiss is that Valley View's assessment of the fetal heart tones and the request for a fetal monitor - all undertaken before Dawn Zinn was discovered in distress in an emergency room bed - is not an appropriate medical screening in compliance with subsection 1395dd(a). This argument,

7

however, says nothing about Valley View's procedures for evaluating patients in Dawn Zinn's condition, but rather, it merely suggests that what was done was inadequate, and that if further evaluation had been performed, the tragic death of Plaintiffs' baby would not have occurred. Allegations of this type do not fall under the coverage of EMTALA. Whether further screening could have been performed, or whether the requested fetal monitor should have been delivered to the emergency room and applied to Dawn Zinn, are issues to be addressed in the context of state malpractice law. See Rivera, 613 F.Supp.2d at 199 ("A misdiagnosis or screening as opposed to no screening, does not create a cause for EMTALA but a cause under state malpractice law . . . .").

Moreover, even assuming an adequately pled medical screening claim under subsection 1395dd(a), the undisputed fact that Dawn Zinn was moved to the obstetrical department where an emergency cesarean section was performed, precludes recovery. See Collins v. DePaul Hospital, 963 F.2d 303, 307 (10th Cir. 1992)(the fact that patient was not sent home, but was treated in the intensive care unit, defeated any medical screening claim under subsection 1395dd(a)). Dawn Zinn was not sent home from the emergency room, but rather, she was admitted to the hospital for an emergency cesarean section delivery. Plaintiffs' arguments that a more thorough diagnosis or evaluation should have been performed prior to Dawn Zinn's condition reaching such a critical stage are arguments remediable under state malpractice law. These are not arguments consistent with the elimination of patient dumping attempted to remedied by Congress in enacting EMTALA.

In their Complaint, Plaintiffs also assert stabilization and

failure to transfer claims under 42 U.S.C. § 1395dd(b) and (c).[4] Valley View has moved for the dismissal of these claims on the basis that those subsections of EMTALA are not implicated because no discharge or transfer occurred in this case. Plaintiffs have failed to respond to these arguments in their response to the motion to dismiss and they apparently have abandoned any claims under subsections (b) and (c). Moreover, the Court agrees with Valley View and finds the stabilization requirement of subsection 1395dd(b) is not implicated as Dawn Zinn was admitted to the hospital for further treatment in the form of a cesarean section delivery and she was never transferred to another facility. See Harry v. Marchant, 291 F.3d 767, 772 (11th Cir. 2002)("[T]he triggering mechanism for stabilization treatment under EMTALA is

---

[4] Subsection (b)(1) provides:

> If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either -
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

Subsection (c) requires that "[i]f an individual at a hospital has an emergency medical condition which has not been stabilized . . ., the hospital may not transfer the individual unless" certain conditions are met.

transfer."); see also 42 C.F.R. § 489.24(a)(ii)("If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under [42 U.S.C. § 1395dd(b)] ends . . . ."). Finally, subsection (c) merely "delineates what must be done before the individual is transferred." Urban v. King, 43 F.3d 523, 526 (10th Cir. 1994). It does not impose an affirmative obligation on a hospital to transfer a patient under a particular set of circumstances. Subsection (c) "merely restricts the conditions under which a hospital may transfer an unstabilized critical patient." Guzman v. Memorial Hermann Hosp. Sys., 637 F.Supp.2d 464, 516 (S.D. Tex. 2009)(quoting Fraticelli-Torres v. Hosp. Hermanos, 300 Fed. Appx. 1, 6 (1st Cir. 2008)). Consequently, Plaintiffs' EMTALA claims under subsections (b) and (c) are subject to dismissal.

**State Law Claims**

With respect to the remaining medical negligence/wrongful claims against Defendants, no independent basis for federal jurisdiction exists over such state law claims.[5] Case law in the Tenth Circuit suggests that when federal claims are resolved prior to trial, the district court should decline to exercise jurisdiction over any remaining state law claims and allow a plaintiff to pursue those claims in state court. See Bauchman for Bauchman v. West High School, 132 F.3d 542, 549 (10th Cir. 1997), cert. denied, 132 F.3d 542 (1998); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995); see 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise jurisdiction over remaining state claims when all claims over which court has original

---

[5] The parties are all Oklahoma citizens; consequently, jurisdiction is not appropriate under the diversity statute, 28 U.S.C. § 1332.

jurisdiction are dismissed). Consequently, as Plaintiffs' federal claims under EMTALA have been dismissed well before the commencement of trial, the Court exercises its discretion and orders Plaintiffs' medical negligence/wrongful death claims against all Defendants dismissed without prejudice.

**Conclusion**

Based on the foregoing reasons, the Court concludes that Plaintiffs have failed to state a claim upon which relief can be granted against Valley View under EMTALA. Valley View's Motion to Dismiss (Doc. No. 42) is granted with respect to Plaintiffs' EMTALA claims. Having found EMTALA to be inapplicable, the Court exercises its discretion and declines supplemental jurisdiction over the remaining state law medical negligence/wrongful death claims against all Defendants. Defendants' Motions to Dismiss (Docket Nos. 28, 29, 37, and 42) with respect to Plaintiffs' state law claims are granted to the extent that Plaintiffs' state law claims are ordered dismissed without prejudice. This action is therefore dismissed in its entirety.

It is so ordered this 19th day of January, 2010.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma